# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| CORSICA L. BARBER<br>P.O. Box 910, Lot 624<br>Columbus, Ohio 43216 | :<br><br>: | |
| Plaintiff, | : | CASE NO. 2:21-cv-2137 |
| v. | : | JUDGE |
| CASS INFORMATION SYSTEMS, INC.<br>c/o CT Corporation System<br>4400 Easton Commons Way, Ste. 125<br>Columbus, Ohio 43219 | :<br><br>:<br><br>: | MAGISTRATE JUDGE |
| Defendant. | | |

## COMPLAINT
**(With Jury Demand)**

NOW COMES Plaintiff Corsica Barber and proffers this Complaint for damages against Defendant Cass Information Systems, Inc. as follows:

## THE PARTIES

1. Plaintiff is an African-American person residing in Franklin County, Ohio.

2. Defendant is a foreign corporation with offices and facilities in Franklin County, Ohio.

## JURISDICTION AND VENUE

3. Counts I, II are brought pursuant to the laws of the United States, therefore the Court has jurisdiction pursuant to 28 U.S.C. § 1331.  Counts III and IV are brought under the same operative fact, and therefore are subject to supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

4. Venue is proper pursuant to 28 U.S.C. § 1391, due to the fact that the Defendant has facilities in Franklin County, Ohio, at which all of the events in question took place.

**FACTUAL BACKGROUND**

5. Plaintiff was employed by Defendant as a Major Account Representative at its facility at its Columbus offices from June of 2018 until she was discharged on or about January 12, 2021.

6. In October 2019, Plaintiff was given a Written Warning from her supervisor Phyllis Higgins-Rayl ("Higgins-Rayl").  The Written Warning was during a period of time in which many Account Managers had left the company, and those former employees had left many tasks and projects not completed, and Higgins-Rayl verbally expressed her agreement with the unfair nature of blaming Plaintiff for the issues, yet held the Written Warning over Plaintiff's head as a threat in the following months.

7. Plaintiff made a written complaint regarding Higgins-Rayl's harassment to Human Resources in December of 2019, with examples that included Higgins-Rayl telling Plaintiff that she should "just go ahead and quit" instead of being placed on a Performance Improvement Plan ("PIP").  Plaintiff stated that she believed that race was a factor in her ill treatment.

8. After Plaintiff's complaint to HR, Higgins-Rayl demanded weekly meetings with Plaintiff regarding performance.  Not trusting Higgins-Rayl, Plaintiff asked to tape the meetings but Higgins-Rayl denied that request.  Plaintiff then asked for an HR observer, at which point Higgins-Rayl stated, "How about we just call security?"  This made Plaintiff very afraid, so she went forward with the meeting without a witness.

9. On or about January 2, 2020, Plaintiff met with Director of HR Monique Winston ("Winston") and verbally detailed Higgins-Rayl's harassment.  When Plaintiff mentioned

Higgins-Rayl's threat to "call security," Winston explained that Defendant did not have any "security."

10. On January 15, 2020, Higgins-Rayl put Plaintiff on a PIP.

11. On January 24, 2020, Plaintiff met with Winston and detailed the discouraging treatment Higgins-Rayl was engaging in at the PIP's required weekly meetings. Plaintiff picked up a blank "Employee Incident Form" at this meeting.

12. On February 3, 2020, Plaintiff submitted a fully-executed Employee Incident Form to HR detailing the harassment she was being subjected to by Higgins-Rayl and stating that she believed that race was a factor in her ill treatment.

13. In late February 2020, another African-American Major Account Representative, Michael Artis, resigned his employment rather than continue to deal with Higgins-Rayl's harassment.

14. On March 15, 2020, Plaintiff successfully completed her PIP.

15. Plaintiff took a COVID-19 related leave during May-June of 2020. Upon her return from that leave in late-July 2020, Higgins-Rayl gave Plaintiff an uncharacteristic 30-item immediate to do list that effectively buried Plaintiff in menial tasks that stopped her from servicing her regular clients in a normal fashion. Higgins-Rayl also began assigning Plaintiff projects with uncharacteristically short deadlines

16. On September 4, 2020, Plaintiff sent a detailed email to HR regarding the situation with Higgins-Rayl deteriorating, including a "mistaken" Skype reveal of a text conversation between Higgins-Rayl and Plaintiff's immediate supervisor in which they degraded Plaintiff.

17. On September 9, 2020, Plaintiff met with HR VP Christi Reiter and Higgins-Rayl in which suggestions were made to "streamline" communication between Plaintiff and Higgins-Rayl.

18. In October of 2020, Defendant offered Plaintiff a severance package. Winston threatened that if the package was not accepted, and Plaintiff was discharged, they would fight any attempt by Plaintiff to obtain unemployment compensation benefits. Winston stated she knew Plaintiff was a single mother, and that she probably couldn't afford such a fight. Plaintiff did not accept the severance package, which would have required a blanket release of all potential claims against Defendant.

19. On November 12, 2020, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") regarding in part discrimination on the basis of race and retaliation for making complaints about race discrimination.

20. On or about March 20, 2021, Plaintiff received a Right-to-Sue notice from the EEOC her Charge described in ¶ 19 above.

## COUNT I
## RACE DISCRIMINATION
## 42 U.S.C. §2000e et seq.

21. Plaintiff reasserts and reincorporates each and every allegation contained in ¶¶ 1-20 above as if fully rewritten here.

22. Plaintiff is an "employee" as defined by 42 U.S.C. §2000e(d).

23. Defendant is an "employer" as defined by 42 U.S.C. §2000e(b).

24. In its actions described in ¶¶ 6-18 above, Defendant has discriminated against Plaintiff on the basis of her race, African-American, in violation of 42 U.S.C. §2000e-2(a)(1).

25. Defendant's violations of 42 U.S.C. §2000e-2(a)(1) entitle Plaintiff, pursuant to 42 U.S.C. §2000e-5 and 42 U.S.C. §1981a, to monetary damages which include back pay and benefits, compensatory damages, and attorney's fees and costs of bringing this litigation, in a amount to be determined at trial, but in any event not less than $250,000.00.

## COUNT II
**RETALIATION FOR MAKING COMPLAINTS OF RACE DISCRIMINATION**
**42 U.S.C. §2000e-2**

26. Plaintiff reasserts and reincorporates each and every allegation contained in ¶¶ 1-25 above as if fully rewritten here.

27. In its actions described in ¶¶ 8-18 above, Defendant discriminated against Plaintiff on the basis of her making complaints about race discrimination in violation of 42 U.S.C. §2000e-2(a)(1).

28. in its action or discharging Plaintiff, Defendant discriminated against Plaintiff because she filed a Charge of Discrimination on November 12, 2020, in violation of 42 U.S.C. §2000e-2(a)(1).

29. Defendant's violations of 42 U.S.C. §2000e-2(a)(1) entitle Plaintiff, pursuant to 42 U.S.C. §2000e-5 and 42 U.S.C. §1981a, to monetary damages,3 which include back pay and benefits, compensatory damages, punitive damages and attorney's fees and costs of bringing this litigation, in an amount to be determined at trial, but in any event not less than $250,000.00.

## COUNT III
**RACE DISCRIMINATION**
**O.R.C. § 4112.01 et seq.**

30. Plaintiff reincorporates the allegations contained in ¶¶ 1-29 as if fully rewritten here.

31. Plaintiff was an "employee" as that is defined by O.R.C. § 4112.01.

32. Defendant was Plaintiff's "employer" as that is defined by O.R.C. § 4112.01.

33. Plaintiff was disciplined, harassed, and ultimately discharged because she was African-American.

34. Plaintiff was treated in a disparately negative manner compared to similarly situated White employees.

35. Defendants' actions regarding race discrimination were willful and taken in reckless disregard for Plaintiff's legal rights.

36. Defendant's gender discrimination regarding Plaintiff entitles Plaintiff to monetary damages including lost pay and benefits, compensatory damages for pain and suffering, punitive damages, attorney fees and costs of bringing this litigation, in an amount to be determined at trial, but in any event not less than $250,000.00, as well as the equitable remedy of reinstatement to employment, and/or front pay.

## COUNT IV
## RETALIATION FOR MAKING COMPLAINTS REGARDING RACE DISCRIMINATION
## O.R.C. § 4112.01 et seq.

37. Plaintiff reincorporates the allegations contained in ¶¶ 1-36 as if fully rewritten here.

38. Plaintiff was disciplined, harassed, and ultimately discharged because she made good faith complaints about being discriminated against because she was African-American.

39. Defendants' retaliatory actions regarding Plaintiff's good faith complaints of race discrimination were willful and taken in reckless disregard for Plaintiff's legal rights.

40. Defendant's unlawful retaliation regarding Plaintiff's good faith complaints of race discrimination entitles Plaintiff to monetary damages including lost pay and benefits, compensatory damages for pain and suffering, punitive damages, attorney fees and costs of bringing this litigation, in an amount to be determined at trial, but in any event not less than $250,000.00, as well as the equitable remedy of reinstatement to employment, and/or front pay.

**WHEREFORE**, Plaintiff demands,

for Count I, monetary damages including back pay and benefits, compensatory damages, and attorney's fees and costs, whichever is appropriate, in an amount to be determined at trial, but in any event not less than $250,000.00;

for Count II, monetary damages including back pay and benefits, compensatory damages, and attorney's fees and costs, whichever is appropriate, in an amount to be determined at trial, but in any event not less than $250,000.00.

for Count III, monetary damages including back pay and benefits, compensatory damages, and attorney's fees and costs, whichever is appropriate, in an amount to be determined at trial, but in any event not less than $250,000.00; and,

for Count IV, monetary damages including back pay and benefits, compensatory damages, and attorney's fees and costs, whichever is appropriate, in an amount to be determined at trial, but in any event not less than $250,000.00.

## JURY DEMAND

Plaintiff demands that a jury decide all of the above claims.

Respectfully Submitted,

s/ Gary A. Reeve
Gary A. Reeve (0064872)
Trial Attorney for Plaintiff
Law Offices of Gary A. Reeve
5354 Cemetery Road
Hilliard, Ohio 43026
Ph.: (614) 808-1881
Fax: (614) 334-5107
greeve@reevelaw.net

                                                        <u>s/ Karen L. Poling</u>
                                                        Karen L. Poling (0069417)
                                                        Co-Counsel for Plaintiff
                                                        5354 Cemetery Road
                                                        Hilliard, Ohio 43026
                                                        Ph.|: (614) 771-6000
                                                        Fax: (614) 319-7569
                                                        *karen@karenpolnglaw.com*